******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# ELIZABETH BUCCI *v.* CITY OF BRIDGEPORT
## (AC 46399)

Elgo, Suarez and Keller, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant city for injuries she sustained in connection with a motor vehicle accident. On the night of the accident, after finishing their shifts, C and G, police officers employed by the defendant, drove separately to a restaurant, where C consumed alcoholic beverages. When they left the establishment, C was visibly intoxicated. As G was following C to his home, C's vehicle crossed into the plaintiff's lane of travel and collided with her vehicle. The plaintiff claimed that the defendant was liable for G's allegedly negligent conduct in allowing C to operate his vehicle while under the influence of alcohol pursuant to the applicable statute (§ 52-557n) and for failing to properly screen C prior to hiring him as a member of the police department. The trial court granted the defendant's motion for summary judgment and denied the plaintiff's motion for summary judgment, and the plaintiff appealed to this court. *Held*:

1. The trial court properly determined that a genuine issue of material fact did not exist as to whether G was acting within the scope of his employment or official duties so as to subject the defendant to a claim for the plaintiff's injuries pursuant to § 52-557n (a) (1) (A): the affidavits submitted by the defendant in connection with its motion for summary judgment demonstrated that G was not engaged in any official duty of his employment or doing something incidental to it at the time of his allegedly negligent conduct, as G and C had been off duty for approximately four hours prior to the accident, they drove their personal vehicles to the restaurant, they were not in uniform and did not have badges, identifying insignia or service weapons on their person at the restaurant, they had not been attending a party sponsored by the police department, and they did not perform any police services while at the restaurant; moreover, contrary to the plaintiff's assertions, G's violations of the police department's policies and procedures did not constitute violations of his official duties pursuant to statute (§ 54-1f) but, rather, were violations of his overall responsibility and ethical character.

2. The trial court properly determined that the plaintiff's claim regarding the defendant's negligent hiring of C was barred by the applicable statute of limitations (§ 52-584): because C was hired in 2011 and the present case was commenced in 2019, C was hired more than three years before the institution of the present action; moreover, the court properly determined that the plaintiff had waived her claim that the continuing course of conduct doctrine tolled the statute of limitations as it was procedurally

defective because, instead of affirmatively pleading the doctrine in avoidance of the defendant's statute of limitations special defense, she asserted it for the first time in her memorandum of law in opposition to the defendant's motion for summary judgment; furthermore, the court properly rejected the plaintiff's continuing course of conduct argument on substantive grounds as the plaintiff failed to allege that she had a special relationship with the defendant or to demonstrate that a genuine issue of material fact existed with respect to whether the defendant committed some later, actual or affirmative wrongful act related to the initial hiring of C.

Argued February 7—officially released August 27, 2024

*Procedural History*

Action to recover damages for personal injuries sustained as a result of, inter alia, the defendant's alleged negligence, brought to the Superior Court in the judicial district of Fairfield, where the court, *Welch, J.*, granted the defendant's motion to strike the second count of the plaintiff's complaint; thereafter, the court, *Hon. Barry K. Stevens*, judge trial referee, granted the defendant's motion for summary judgment, denied the plaintiff's motion for summary judgment, and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Stephanie Z. Roberge*, for the appellant (plaintiff).

*Bruce L. Levin*, associate city attorney, for the appellee (defendant).

*Opinion*

SUAREZ, J. The plaintiff, Elizabeth Bucci, appeals from the judgment rendered by the trial court following its granting of a motion for summary judgment that was filed by the defendant, the city of Bridgeport, and its denial of her motion for summary judgment. On appeal, the plaintiff claims that, in granting the defendant's motion for summary judgment, the court improperly (1) concluded that a genuine issue of material fact did not exist with respect to whether Bridgeport Police

Officer Anthony Gianpoalo[1] was acting within the scope of his employment or official duties, and (2) determined that her claim based on the defendant's negligent hiring of Bridgeport Police Officer John Carrano was barred by the applicable statute of limitations.[2] We affirm the judgment of the trial court.

The following procedural history is relevant to our resolution of this appeal. In November, 2019, the plaintiff commenced this action against the defendant. In her complaint, subsequently amended on August 5, 2021 (amended complaint), the plaintiff brought a cause of action, sounding in negligence, based on the conduct of Gianpoalo.[3] In count one of her amended complaint, the plaintiff alleged the following facts: "At all times relevant . . . [Carrano] . . . [and Gianpoalo] . . . were employed by the defendant . . . . [O]n the evening of December 22, 2017 . . . Carrano and other

[1] Gianpoalo's name is alternatively spelled "Gianpaolo" in the record and in the parties' appellate briefs. We will use the spelling Gianpoalo because that is how his name appears on his affidavit that was submitted to the court in connection with the defendant's motion for summary judgment.

[2] The plaintiff also claims on appeal that the court erred in "holding [that] the discretionary function doctrine barred [her August 5, 2021 amended] complaint." The court, however, did not grant the defendant's summary judgment motion on this ground. Accordingly, we need not address this issue in light of our conclusions that the court correctly determined that a genuine issue of material fact did not exist as to whether Gianpoalo and Carrano were acting within the scope of their employment and that the plaintiff's claim of negligent hiring was barred by the statute of limitations. *Lashgari* v. *Lashgari*, 197 Conn. 189, 196, 496 A.2d 491 (1985) ("we need not address other issues raised on appeal if the trial court has correctly decided an issue that is sufficient to sustain the judgment" (emphasis omitted)). Moreover, in light of our decision to affirm the court's judgment granting the defendant's summary judgment motion, we need not address the court's denial of the plaintiff's motion for summary judgment.

[3] Although the plaintiff referred to Gianpoalo as Officer Doe in her amended complaint, by the time that the court subsequently ruled on the defendant's motion for summary judgment, it was undisputed that Officer Doe referred to Gianpoalo. For the purposes of clarity, all references to Officer Doe in the plaintiff's amended complaint have been changed to Gianpoalo.

police officers . . . were attending a holiday party held by the . . . Bridgeport Police Department at Vazzy's Pasta & Pizza [in Bridgeport (Vazzy's)] . . . . Between approximately 10 p.m. on December 22, 2017, and 12:08 a.m. on December 23, 2017, [Carrano] consumed alcoholic beverages and became visibly intoxicated while attending said party. . . .

"On December 23, 2017, at approximately 12:08 a.m., [Carrano] left [Vazzy's] intoxicated and was accompanied by [Gianpoalo] . . . . [Gianpoalo] . . . permitted [Carrano] to drive his motor vehicle when [he] knew or should have known that [Carrano] was intoxicated. . . . [Gianpoalo] . . . made a plan to follow [Carrano] to his destination when he knew or should have known that [Carrano] was intoxicated and undertook to follow him as planned. . . .

"On December 23, 2017, at approximately 12:08 a.m., the plaintiff . . . was operating her motor vehicle in a northerly direction on Broadridge Avenue, at or near the intersection of Emerald Place, in Bridgeport . . . . [A]s the plaintiff . . . proceeded northbound on Broadridge Avenue, the vehicle operated by [Carrano], suddenly and without warning, crossed over the yellow line into the plaintiff's lane of travel and violently collided into the front of her vehicle, resulting in significant front end damage which required the plaintiff to be extricated from the vehicle. . . . The plaintiff . . . and [Carrano] were both transported by ambulance from the scene of the accident to Bridgeport Hospital for an evaluation of their injuries. . . . Following an investigation by the Stratford Police Department, it was discovered that [Carrano's] blood alcohol content was 0.25 . . . at the time he was being treated at Bridgeport Hospital following the collision.

\* \* \*

"As a . . . result [of the accident], the plaintiff . . . incurred considerable expenses for emergency medical

care, hospitalization, physicians' visits, diagnostic studies, physical rehabilitation, surgical intervention, follow-up therapy, and medicines . . . ."

In her amended complaint, the plaintiff alleged that, pursuant to General Statutes § 52-557n,[4] the defendant, through its agents, servants, and/or employees, was liable for the damages she sustained as a result of the accident. Specifically, the plaintiff alleged that the defendant was liable because Gianpoalo allowed Carrano to operate his motor vehicle while under the influence of alcohol in violation of General Statutes §§ 14-222 and 14-227a[5] and several Bridgeport Police Department policies.[6] The plaintiff also alleged that the defendant was liable because Gianpoalo failed to prevent Carrano's operation of his motor vehicle in violation of General Statutes § 54-1f,[7] as Gianpoalo did not arrest

[4] General Statutes § 52-557n provides in relevant part: "(a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . ."

[5] General Statutes § 14-222 provides in relevant part: "(a) No person shall operate any motor vehicle upon any public highway of the state . . . recklessly . . . ."

General Statutes § 14-227a provides in relevant part: "(a) No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content. For the purposes of this section, 'elevated blood alcohol content' means a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight . . . ."

[6] The policies that the plaintiff alleged Gianpoalo violated include 1.1.7 Law Enforcement Code of Ethics, 1.1.7.2 Performance of the Duties of a Police Officer, 1.1.7.9 Private Life, 1.3.4 Knowledge of Department Rules and Regulations, 1.3.5 Violation of Rules, 1.3.7 Conformance to Laws, and 1.3.21 Unbecoming Conduct.

[7] General Statutes § 54-1f provides in relevant part: "(b) Members of . . . any local police department . . . shall arrest, without previous complaint and warrant, any person who the officer has reasonable grounds to believe has committed or is committing a felony."

Carrano when he had reasonable grounds to believe that Carrano was committing a felony. The plaintiff further alleged that the defendant was liable for failing to properly screen Carrano prior to hiring him as a member of the Bridgeport Police Department. In count three of her amended complaint,[8] the plaintiff pleaded in the alternative that, in the event the court finds that the defendant's actions were discretionary, Gianpoalo's duty to act was so clear and unequivocal that discretionary act immunity does not apply to the defendant.

On September 2, 2021, the defendant filed an answer in response to the plaintiff's amended complaint. In its answer, the defendant admitted to some of the plaintiff's allegations, denied some of the allegations, and left the plaintiff to her proof as to other allegations. In particular, the defendant admitted that it employed Carrano and Gianpoalo as Bridgeport police officers and that the officers were at Vazzy's between approximately 8:30 p.m. and 11:45 p.m. on December 22, 2017, but denied that they were attending a holiday party held by the Bridgeport Police Department. The defendant also admitted that, between approximately 10 p.m. and 11:45 p.m. that evening, Carrano consumed alcoholic beverages and left Vazzy's intoxicated, accompanied by Gianpoalo. Moreover, the defendant admitted that, at approximately 12:08 a.m. on December 23, 2017, the vehicle operated by Carrano crossed over the yellow line into the plaintiff's lane of travel and violently collided into the front of her vehicle. The defendant further admitted that the plaintiff and Carrano were transported by ambulance from the scene of the accident to Bridgeport Hospital and that Carrano had a blood

---

[8] On October 13, 2020, and July 2, 2021, the court, *Welch, J.*, struck count two of the plaintiff's original and substitute complaints, respectively. Thereafter, the plaintiff left count two intentionally blank in her amended complaint. The plaintiff does not challenge the court's granting of the defendant's motion to strike in this appeal.

alcohol content of 0.25 at the time he was treated at the hospital. In addition, by way of a special defense, the defendant alleged that the plaintiff operated her motor vehicle in violation of General Statutes § 14-36.[9]

On September 13, 2021, the plaintiff filed a reply to the defendant's special defense raised in its September 2, 2021 answer, denying the defendant's allegations contained therein. On May 20, 2022, the defendant filed a request for leave to amend its answer and special defense to include two additional special defenses. Specifically, the defendant alleged that the plaintiff's claim that the defendant negligently hired Carrano was barred by the statute of limitations, as this action was commenced more than three years from the defendant's hiring of Carrano. The defendant also alleged that the plaintiff's claims were barred by governmental immunity. On May 27, 2022, the plaintiff filed an objection to the defendant's request to amend its answer and special defense, arguing that the request would cause undue delay and significant prejudice to the plaintiff. On June 20, 2022, the court, *Welch, J.*, overruled the plaintiff's objection and allowed the defendant to amend its answer to include the two additional special defenses. Later, the court permitted the defendant to file a fourth special defense based on an allegation that the plaintiff had released any claim sounding in negligence against Carrano.[10]

---

[9] General Statutes § 14-36 provides in relevant part: "(c) . . . (2) The youth instruction permit shall entitle the holder, while such holder has the permit in his or her immediate possession, to operate a motor vehicle on the public highways, provided such holder is under the instruction of, and accompanied by, a person who holds an instructor's license . . . or a person twenty years of age or older who has been licensed to operate, for at least four years preceding the instruction, a motor vehicle of the same class as the motor vehicle being operated and who has not had his or her motor vehicle operator's license suspended by the commissioner during the four-year period preceding the instruction. . . ."

[10] On July 12, 2022, the defendant filed a second request to amend its answer to include a fourth special defense alleging that, "[t]o the extent that the negligence of . . . Carrano is an element of any claim or cause of

On July 6, 2022, the defendant filed a motion for summary judgment and a supporting memorandum of law. In its motion for summary judgment, the defendant argued that Carrano and Gianpoalo were off duty during the events alleged in the plaintiff's amended complaint and were not acting within the scope of their employment pursuant to § 52-557n (a) (1) (A). See footnote 4 of this opinion. The defendant also argued that the plaintiff's claim of negligence for its hiring of Carrano was barred by the statute of limitations pursuant to General Statutes § 52-584.[11] The defendant further asserted that the plaintiff's claim of negligence involved discretionary acts for which there is governmental immunity, and the plaintiff had not claimed that any exception to governmental immunity applied. In support of its motion, the defendant submitted multiple exhibits including, inter alia, affidavits from Carrano, Gianpoalo, Bridgeport Police Captain Kevin Gilleran, Kristine Kelley Dwyer (a manager of Vazzy's), and the former Bridgeport Chief of Police Armando Perez; the deposition transcript of the acting Bridgeport Chief of Police Rebeca Garcia; and a letter of findings and discipline imposed on Gianpoalo by the internal affairs division of the Bridgeport Police Department.

In both Carrano's and Gianpoalo's affidavits, the officers stated that, on December 22, 2017, at approximately 8 p.m., they were dismissed from their detail,

action, that claim or cause of action is barred by the plaintiff having released Carrano for $50,000 consideration." On July 27, 2022, the plaintiff filed an objection to the defendant's request to amend, arguing that the defendant's request to amend its answer would cause an unreasonable delay and was unnecessary. On August 8, 2022, the court overruled the plaintiff's objection and allowed the defendant to amend its answer to include its fourth special defense.

[11] General Statutes § 52-584 provides in relevant part: "No action to recover damages for injury to the person . . . caused by negligence . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ."

removed their police uniforms, and dressed in civilian attire. Thereafter, they drove their personal vehicles to Vazzy's. At Vazzy's, the officers did not have any identifying insignia, service weapons, or police badges on their persons. They also stated that there were no police holiday parties, or parties held by the defendant, at Vazzy's on December 22, 2017, nor did the defendant provide the officers with alcoholic beverages, encourage their drinking, or compensate them for being at Vazzy's. The affidavits by Dwyer and Perez further supported the officers' statements that there were no holiday parties at Vazzy's involving the Bridgeport Police Department on that date. Dwyer also averred that Carrano and Gianpoalo were not in uniform and did not have any police markings on their clothing at Vazzy's that evening. Furthermore, Gianpoalo averred that he and Carrano left Vazzy's at approximately 11:40 p.m., and, shortly before midnight, he witnessed Carrano's vehicle veer into the northbound lane, striking the plaintiff's vehicle.

On September 2, 2022, the plaintiff filed a motion for summary judgment and supporting memorandum of law, and an objection to the defendant's motion for summary judgment and supporting memorandum of law. In her memorandum of law in support of her summary judgment motion, the plaintiff argued the defendant was liable to her, pursuant to § 52-557n, because "following the policies and procedures of the Bridgeport Police Department is part of an officer's official duties." Specifically, the plaintiff asserted that, "[a]lthough [Gianpoalo] was off duty at the time he knowingly permitted and facilitated his intoxicated fellow police officer to drive on December 23, 2017, he was nonetheless acting within the scope of his employment or official duties." In support of her argument, the plaintiff relied on the testimony from the deposition of Garcia where she affirmed that following the policies

and procedures of the Bridgeport Police Department is part of an officer's official duties. The plaintiff also referenced the findings from the Bridgeport Police Department's internal affairs investigation and suspension of Gianpoalo for violating the police department's policies and procedures regarding his conduct on December 23, 2017, while he was off duty. Moreover, the plaintiff argued that § 54-1f mandated Gianpoalo to intervene and arrest Carrano to stop him from operating his motor vehicle while he was visibly intoxicated.

In her memorandum of law in support of her objection to the defendant's summary judgment motion, the plaintiff, for the first time, asserted that her negligent hiring claim was not barred by the statute of limitations on the basis of the continuing course of conduct doctrine. Specifically, she argued that "Carrano was unfit to serve as a police officer from the day he was hired and every day thereafter. . . . The [defendant's] ministerial duty to keep an unfit police officer from the police force continued from . . . Carrano's date of hire until his resignation. The actionable harm that occurred as a result of that breach occurred on December 23, 2017, and the plaintiff instituted this action well within the applicable statute of limitations." (Citation omitted; emphasis omitted.)

On November 15, 2022, the defendant filed a memorandum of law in opposition to the plaintiff's motion for summary judgment. In its memorandum, the defendant argued that "[t]he statute [of limitations] is not extended on the unpleaded grounds of continuing course of conduct because there was no special relationship—in fact, no relationship at all—between the [defendant] and the plaintiff. Nor is there a special relationship between either Carrano and Gianpoalo with either the [defendant] or the plaintiff when they are off duty."

On November 21 and 28, 2022, the court, *Stevens, J.*, held oral argument on the plaintiff's and the defendant's

respective motions for summary judgment. On March 17, 2023, the court issued a memorandum of decision granting the defendant's summary judgment motion and denying the plaintiff's summary judgment motion. In its memorandum of decision, the court stated that "[a] dispositive issue for the [plaintiff's] claims against [the defendant] is whether [Carrano and Gianpoalo] were 'acting within the scope of [their] employment or official duties' within the meaning of § 52-557n." The court concluded that the defendant had produced sufficient evidence to satisfy its initial burden of showing the absence of any genuine issue of material fact that Gianpoalo and Carrano were not acting within the scope of their employment. In support thereof, the court referenced the affidavits submitted by the defendant, which confirmed that, on December 22, 2017, the officers were off duty when they arrived at Vazzy's. Accordingly, the court shifted the burden to the plaintiff to "provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.)

In its memorandum of decision, the court stated that the plaintiff essentially argued, in opposition to the defendant's position, that Bridgeport police officers always have a duty to follow the policies and procedures of the Bridgeport Police Department, and, therefore, Gianpoalo and Carrano were acting within the scope of their official duties during the events of the automobile accident. The court rejected the plaintiff's argument, explaining that such an argument would "dissolve the distinction between an employee's official and unofficial acts because under [the plaintiff's] reasoning all personal and private activities, no matter how attenuated from the employer's legitimate business concerns, could be labeled as official duties." Accordingly, the court concluded that the defendant was entitled to summary judgment as a matter of law regarding the allegedly negligent conduct of Carrano and Gianpoalo.

As to the plaintiff's negligent hiring claim with respect to Carrano, the court concluded that it was barred by the statute of limitations, pursuant to § 52-584. Specifically, the court agreed with the defendant that, because Carrano was hired on April 25, 2011, and the present case was filed in 2019, Carrano was hired more than three years before the institution of the present action, and, thus, her negligent hiring claim was time barred. Furthermore, the court rejected the plaintiff's continuing course of conduct argument on both procedural and substantive grounds. The court noted that the plaintiff had asserted the doctrine only in response to the defendant's motion for summary judgment and that her reliance on the doctrine was not reflected anywhere in the pleadings prior to the filing of the defendant's summary judgment motion. Therefore, pursuant to Practice Book § 10-57,[12] the court held that, "[b]ecause the continuing course of conduct doctrine was not pleaded or timely raised, the doctrine must be deemed waived."

Moreover, the court determined that, "even if [the plaintiff] had properly asserted the continuing course of conduct doctrine, this argument would fail as a matter of law because she has not satisfied all of the elements necessary for its application." Specifically, the court explained that, "in order to establish that a duty continued to exist after the alleged[ly] wrongful hiring of Carrano, [the plaintiff] must provide 'evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant, related to the prior act.' " The court concluded that the plaintiff had not alleged or shown that a special relationship existed between the parties. The court also determined that, even if the

[12] Practice Book § 10-57 provides in relevant part: "Matter in avoidance of affirmative allegations in an answer or counterclaim shall be specially pleaded in the reply. . . ."

plaintiff had established that the defendant's initial hiring of Carrano was negligent, the plaintiff failed to show that the defendant committed some later, actual or affirmative wrongful act related to its prior negligent conduct. The court held that "the continuing course of conduct doctrine cannot be invoked in a situation that merely or solely involves an initial wrong that continues unabated or uncorrected until it reaches and harms a victim. Such a concept would absorb the statute of limitations to such an extent that the limitation period would be rejected in virtually all the cases for which it would appropriately apply." This appeal followed. Additional procedural history will be set forth as necessary.

Before addressing the merits of the plaintiff's claims, we begin by setting forth the applicable standard of review and relevant legal principles. "In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the

opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]. . . . Our review of the trial court's decision to grant [or to deny a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Kuselias* v. *Zingaro & Cretella, LLC*, 224 Conn. App. 192, 207–208, 312 A.3d 118, cert. denied, 349 Conn. 916, 316 A.3d 357 (2024).

I

The plaintiff first claims that, in rendering summary judgment in favor of the defendant, the court improperly concluded that a genuine issue of material fact did not exist with respect to whether Gianpoalo was acting within the scope of his employment or official duties. The plaintiff argues that "[t]he evidence supports a finding that [Gianpoalo's] conduct on December 22, 2017, was a violation of his official duties." Specifically, the plaintiff contends that the policies and procedures of the Bridgeport Police Department and the results of its internal affairs investigation support the fact that Gianpoalo violated his official duties as a matter of law under § 52-557n. In further support thereof, the plaintiff refers to the testimony of Garcia, who, in her deposition, affirmed that following the policies and procedures of the Bridgeport Police Department is part of an officer's official duties. We are not persuaded.

The following additional procedural history is relevant to our resolution of the plaintiff's claim. On December 7, 2021, and June 21, 2022, the plaintiff's attorney conducted remote depositions of Garcia, the acting Bridgeport chief of police. At her December 7, 2021

deposition, the plaintiff's attorney asked Garcia whether "abiding by or following the policies and procedures of the . . . Bridgeport Police Department is part of an officer's official duties . . . ." Garcia responded in the affirmative. Thereafter, during her June 21, 2022 deposition, the plaintiff's attorney asked Garcia whether Gianpoalo's violations of the Bridgeport Police Department's policies and procedures, as found by its internal affairs investigation, were "violation[s] of [Gianpoalo's] official duties as a police officer . . . ." Garcia clarified that "[the violations] were not part of [his] official duties per se, because he was not working at the time that this incident occurred. . . . If he would have been working, it would be part of his official duties. . . . He was comporting himself in . . . his private life, so it was not his official duties. . . . The private life is in concert with being a police officer, but it's not an official duty. An official duty is if you're actually working within your capacity as a police officer.

\* \* \*

"[T]here is such a thing as an officer being off duty and not being held as a police officer himself or herself; they're not working within their official capacity . . . ." Garcia explained that the policies and procedures of the Bridgeport Police Department are not part of an officer's official duties but, rather, "part of the ethical makeup of that officer and [his] responsibility."

In its March 17, 2023 memorandum of decision, the court referenced this portion of Garcia's testimony, stating that "Garcia explains that the general responsibilities of a police officer and the issues of a police investigation present separate questions than whether Gianpoalo was acting in an official capacity at the time of the accident. . . . Garcia explains that the policies and procedures of the Bridgeport Police Department, which Gianpoalo is said to have violated, are part of

the overall police officer's responsibility and ethical character. She specifically does not categorize the violations as part of Gianpoalo's, or any other officer's, official duties and distinguishes between the policies and procedures which govern private life and official police conduct." (Citation omitted.)

On appeal, the plaintiff argues that, "although [Gianpoalo] was off duty, because he failed to intervene to prevent a fellow officer from driving while intoxicated, he violated his official duties thereby subjecting the defendant . . . to a claim for the plaintiff's injuries pursuant to . . . § 52-557n." We are not persuaded.

The following legal principles are relevant to our resolution of the plaintiff's claim. "Section 52-557n (a) provides that a local government will not be liable for the negligent acts or omissions of an employee unless the employee was acting within the scope of his employment or official duties. In determining whether an employee has acted within the scope of employment, courts look to whether the employee's conduct: (1) occurs primarily within the employer's authorized time and space limits; (2) is of the type that the employee is employed to perform; and (3) is motivated, at least in part, by a purpose to serve the employer. . . . Ordinarily, it is a question of fact as to whether a wilful tort of the servant has occurred within the scope of the servant's employment . . . [b]ut there are occasional cases [in which] a servant's digression from [or adherence to] duty is so clear-cut that the disposition of the case becomes a matter of law. . . . More specifically, we have held that a police officer's actions occurred in the course of duties if [the actions] took place (1) within the period of employment, (2) at a place where the employee could reasonably be, and (3) while the employee is reasonably fulfilling the duties of employment or doing something incidental to it." (Citation

omitted; internal quotation marks omitted.) *Doe* v. *Flanigan*, 201 Conn. App. 411, 431–32, 243 A.3d 333, cert. denied, 336 Conn. 901, 242 A.3d 711 (2020).

In the present case, the affidavits by Carrano, Gianpoalo, and Gilleran set forth undisputed evidence that Gianpoalo and Carrano were released from their detail at approximately 8 p.m. on December 22, 2017, and were off duty for approximately four hours prior to the time of the accident or the allegedly negligent conduct. Moreover, the affidavits by Gianpoalo, Carrano, and Dwyer support the conclusion that the officers drove their personal vehicles to Vazzy's, were not in uniform, and did not have their badges, identifying insignia, or service weapons on their person at Vazzy's. The affidavits also revealed that the officers were not attending a Bridgeport Police Department sponsored holiday party that evening, nor did they perform any police services while at Vazzy's. These submissions demonstrated that, at the time of Gianpoalo's allegedly negligent conduct, he was not engaged in any official duty of his employment or doing something incidental to it. On the basis of the aforementioned evidence, the court properly concluded that the defendant had produced sufficient evidence to satisfy its initial burden of showing an absence of any genuine issue of fact that Gianpoalo was not acting within the scope of his employment as a police officer at the time of his allegedly negligent conduct.

Moreover, in its March 17, 2023 memorandum of decision, the court rejected the plaintiff's argument that Gianpoalo's violations of the policies and procedures of the Bridgeport Police Department illustrate that he violated his official duties. The court noted that "the general responsibilities of a police officer and the issues of a police [internal affairs] investigation present separate questions than whether Gianpoalo was acting in an official capacity at the time of the accident. . . . Garcia explains that the policies and procedures of the

Bridgeport Police Department, which Gianpoalo is said to have violated, are part of the overall police officer's responsibility and ethical character. She specifically does not categorize the violations as part of Gianpoalo's, or any other officer's, official duties and distinguishes between the policies and procedures which govern private life and official police conduct." (Citation omitted.) In doing so, the court reasoned that "[the plaintiff's] argument would dissolve the distinction between an employee's official and unofficial acts because under her reasoning all personal and private activities, no matter how attenuated from the employer's legitimate business concerns, could be labeled as official duties."

The plaintiff argues that the court's analysis too narrowly defines what constitutes "official duties." In support of her argument, the plaintiff cites to this court's decision in *State* v. *Ramirez*, 61 Conn. App. 865, 871, 767 A.2d 778, cert. denied, 256 Conn. 903, 772 A.2d 599 (2001), for the principle that the actions of off-duty police officers have been found by this court to be part of their official duties. The plaintiff's reliance on *Ramirez*, however, is misplaced, as that case is factually distinguishable from the present case. In *Ramirez*, an off-duty police officer was assaulted in a nightclub after attempting to break up an altercation. Id., 867–68. During the altercation, the officer specifically identified himself as a police officer, and, after the altercation appeared to have been settled, the officer turned his back to use the restroom. Id., 868. The defendant then struck the officer in the back of the head, causing the officer to fall to the floor, and proceeded to kick him repeatedly in the face. Id. The defendant subsequently was arrested and convicted, inter alia, of assault of a peace officer. Id., 867. On appeal, this court held that, "[u]nder the circumstances of this case, there was sufficient evidence for the jury to find that [the officer] was

acting within the scope of his duty as a police officer." Id., 871. This court stated that, although the officer was not in uniform and did not display a badge, he identified himself as a police officer and performed his obligation as a police officer. Id. Specifically, this court reasoned that "[a] police officer has the duty to enforce the laws and to preserve the peace. . . . The test is whether the [police officer] is acting within that compass or is engaging in a personal frolic of his own." (Internal quotation marks omitted.) Id.

In the present case, the plaintiff did not present evidence that Gianpoalo was performing his duties as a police officer at any time after being released from his detail on December 22, 2017. The undisputed evidence produced by the defendant illustrates that the officers were in civilian clothing, drove their personal vehicles to and from Vazzy's, did not identify themselves in any way as police officers, and did not perform any police services at Vazzy's. Unlike the officer in *Ramirez*, Gianpoalo was " 'engaging in a personal frolic of his own' " at the time of the accident. Id. Accordingly, we conclude that the court properly determined that a genuine issue of material fact did not exist as to whether Gianpoalo was acting within the scope of his employment or official duties.

II

Next, the plaintiff claims that the court improperly determined that her claim for the defendant's negligent hiring of Carrano was barred by the statute of limitations. Specifically, the plaintiff argues that the court misapplied the continuing course of conduct doctrine on both procedural and substantive grounds. Contrary to the court's conclusion, the plaintiff asserts that, procedurally, she sufficiently pleaded the doctrine in her amended complaint. The plaintiff also contends that,

substantively, the act of Carrano driving while intoxicated constituted an affirmative wrongful act that was related to the defendant's initial negligence of hiring Carrano. We disagree.

The following standard of review and legal principles are relevant to our resolution of this claim. "The question of whether a party's claim is barred by the statute of limitations is a question of law, which this court reviews de novo. . . . The issue, however, of whether a party engaged in a continuing course of conduct that tolled the running of the statute of limitations is a mixed question of law and fact. . . . We defer to the trial court's findings of fact unless they are clearly erroneous." (Internal quotation marks omitted.) *Medical Device Solutions, LLC* v. *Aferzon*, 207 Conn. App. 707, 754–55, 264 A.3d 130, cert. denied, 340 Conn. 911, 264 A.3d 94 (2021).

"[I]n the context of a motion for summary judgment based on a statute of limitations special defense, [the defendant] typically [meets its] initial burden of showing the absence of a genuine issue of material fact by demonstrating that the action had commenced outside of the statutory limitation period. . . . When the plaintiff asserts that the limitations period has been tolled by an equitable exception to the statute of limitations, the burden normally shifts to the plaintiff to establish a disputed issue of material fact in avoidance of the statute. . . . Put differently, it is then incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists." (Internal quotation marks omitted.) *Kuselias* v. *Zingaro & Cretella, LLC*, supra, 224 Conn. App. 208.

"Our Supreme Court has recognized . . . that the statute of limitations and period of repose contained

in . . . § 52-584 may be tolled, in the proper circumstances, under . . . the continu[ing] course of conduct doctrine . . . thereby allowing a plaintiff to bring an action more than three years after the commission of the negligent act . . . . [T]he continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied. . . . For example, the doctrine is generally applicable under circumstances where [i]t may be impossible to pinpoint the exact date of a particular negligent act or omission that caused injury or where the negligence consists of a series of acts or omissions and it is appropriate to allow the course of [action] to terminate before allowing the repose section of the statute of limitations to run . . . .

"It is axiomatic that [w]hen the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed. . . . [I]n order [t]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after the commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . . Where [our Supreme Court has] upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act. . . . Furthermore, [t]he doctrine of continuing course of conduct as used to toll a statute of limitations is better suited to claims where the situation keeps evolving after the act complained of is complete . . . .

"In deciding whether the trial court properly granted the [defendant's] motion for summary judgment, we must determine if there is a genuine issue of material fact with respect to whether the defendant: (1) committed an initial wrong upon the plaintiff, and (2) whether a duty continued to exist after the cessation of the act or omission relied upon by (a) evidence of a special relationship between the parties giving rise to such a continuing duty or (b) some later wrongful conduct of the [defendant] related to the prior act." (Citations omitted; internal quotation marks omitted.) *Macellaio* v. *Newington Police Dept.*, 145 Conn. App. 426, 434–36, 75 A.3d 78 (2013).

"Practice Book § 10-57 provides in relevant part that [m]atter in avoidance of affirmative allegations in an answer or counterclaim shall be specially pleaded in the reply. . . . Under § 10-57, the continuing course of conduct doctrine is a matter that must be pleaded in avoidance of a statute of limitations special defense." (Internal quotation marks omitted.) *Flannery* v. *Singer Asset Finance Co.*, *LLC*, 312 Conn. 286, 300, 94 A.3d 553 (2014). "Beyond the trial courts' discretion to overlook violations of the rules of practice in the absence of a timely objection from the opposing party . . . it may be just to reach the merits of a plaintiff's claim to a toll of the statute of limitations, even when not properly pleaded pursuant to . . . § 10-57, if the issue is otherwise put before the trial court and no party is prejudiced by the lapse in pleading. For example, in *Bellemare* v. *Wachovia Mortgage Corp.*, [94 Conn. App. 593, 607, 894 A.2d 335 (2006), aff'd, 284 Conn. 193, 931 A.2d 916 (2007), this court] deemed it just to reach the merits of a plaintiff's claim that the statute of limitations was tolled by the continuing course of conduct doctrine, despite the plaintiff's failure to plead the doctrine properly pursuant to . . . § 10-57, when the plaintiff asserted the doctrine's applicability for the first time

in a pleading filed in opposition to the defendant's motion for summary judgment, observing that however imperfectly, the plaintiff placed the issue before the court . . . ." (Citation omitted; internal quotation marks omitted.) *Flannery* v. *Singer Asset Finance Co., LLC*, supra, 301–302.

In the present case, the plaintiff asserted the continuing course of conduct doctrine, for the first time, in her memorandum of law in opposition to the defendant's motion for summary judgment. She did not affirmatively plead the doctrine as a matter in avoidance of the defendant's statute of limitations special defense. Therefore, the court found that the plaintiff waived her continuing course of conduct claim as it was procedurally defective. The court nevertheless exercised its discretion and considered the substance of the plaintiff's claim.[13]

In addressing the merits of the plaintiff's claim, the court stated that "[n]o special relationship between the parties has been either alleged or shown. Furthermore, assuming arguendo that [the plaintiff] has established an initial wrong in the hiring of Carrano (a finding that the court expressly does not make), she has failed to show that the [defendant] committed some later, actual or affirmative, wrongful act that related to any such prior conduct. . . . Contrary to [the plaintiff's] apparent position, the continuing course of conduct doctrine cannot be invoked in a situation that merely or solely

---

[13] "We previously have afforded trial courts discretion to overlook violations of the rules of practice and to review claims brought in violation of those rules . . . . It necessarily follows, therefore, that, when a party properly objects to a violation of the rules of practice, the trial court *may disregard* the improperly raised claim if doing so is not an abuse of discretion." (Citation omitted; emphasis added.) *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 273–74, 819 A.2d 773 (2003). The issue of whether the court properly exercised its discretion in addressing the merits of the plaintiff's claim is not raised by the parties on appeal. See *State* v. *Connor*, 321 Conn. 350, 362, 138 A.3d 265 (2016) ("appellate courts generally do not consider issues that were not raised by the parties").

involves an initial wrong that continues unabated or uncorrected until it reaches and harms a victim." (Citation omitted.)

It is undisputed that the plaintiff has failed to allege that she has a special relationship with the defendant. Instead, she argues merely that Carrano's act of driving while intoxicated on December 23, 2017, was an affirmative wrongful act directly related to the defendant's hiring of Carrano. Even if we were to assume that the plaintiff established that the defendant negligently hired Carrano, her continuing course of conduct claim fails as a matter of law because, as the court concluded, she has failed to demonstrate that a genuine issue of material fact exists with respect to whether *the defendant* committed some later, actual or affirmative wrongful act related to its initial hiring of Carrano. The plaintiff has attempted to demonstrate only that Carrano, acting in his individual capacity, committed a wrongful act by driving while intoxicated. Accordingly, we conclude that court properly determined that the plaintiff's claim for the defendant's negligent hiring of Carrano was barred by the statute of limitations.

The judgment is affirmed.

In this opinion the other judges concurred.